# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DION ANDREWS, | : | |
| Plaintiff, | : | No. 3:17-cv-1233 (SRU) |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| Defendants. | : | |

# INITIAL REVIEW ORDER

Dion Andrews ("Andrews"), currently confined at Northern Correctional Institution in Somers, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 challenging his conditions of confinement and alleging that the defendants failed to protect him from assault by another inmate and violated his rights under the Americans with Disabilities Act. The named defendants are Scott Semple, John Aldy, Allison Black, Denise Walker, Lieutenant Papoosha, Correctional Officer John Doe, and Counselor Ferriera. Andrews's complaint was received on July 24, 2017, and his motion to proceed *in forma pauperis* was granted on July 27, 2017.

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest'." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. **Allegations**

The incidents underlying this action occurred while Andrews was confined at Bridgeport Correctional Center ("Bridgeport"). Andrews is classified as seriously mentally ill. He has been diagnosed with bipolar disorder, depression, post-traumatic stress disorder, and paranoia. Andrews has taken medication to address his mental disorders.

On January 29, 2017, Andrews was injured in an altercation with inmate Craig Rivera. Following the incident, correctional officials created a separation profile to keep the two inmates apart. However, defendants Semple, Walker, Black, Aldy, and Papoosha kept both inmates confined in the same protective custody unit at Bridgeport. Andrews told defendants Black, Walker, Aldy, and Papoosha that he feared for his safety and requested a transfer to another housing unit before he was assaulted again.

On March 6, 2017, Andrews was released from his cell to go to recreation. While on recreation, Andrews went to use the phone. While doing so, inmate Rivera jumped out of the shower, where he had been hiding, pushed Andrews onto the "slop sink" and began to beat him. Andrews suffered injuries to his head, neck and back. Andrews alleges that defendants Doe and Ferriera failed to ensure that all inmates, in particular inmate Rivera, were secure in their

assigned cells before releasing Andrews for recreation.

Officers responded to the altercation and used a chemical agent to separate the inmates. Andrews was exposed to an excessive amount of chemical agent causing him to experience pain and burning in his eyes and difficulty breathing.

Defendants Semple and Aldy placed Andrews on Security Risk Group ("SRG") status even though he is not a gang member. Andrews previously had been assaulted in the SRG unit at Walker Correctional Institution. Several gang members had assaulted him because he was not a gang member. After the prior incident, Andrews was placed on SRG protective custody status for his safety.

Inmate Rivera was a member of the same gang whose members had previously assaulted Andrews. Defendants Black, Walker and Papoosha were aware of this when making Andrews's cell assignment.

Andrews is denied commissary, telephone access, visits, a television, a hand-held game boy, and other property that general population inmates are permitted. He is also denied post-secondary education and a job outside the housing unit, and provided only limited communication with other inmates, limited gym recreation, and limited visiting days that are inconvenient for his family. He is not housed in the most integrated setting appropriate for his mental health needs, but rather under restrictive conditions.

**II.     Analysis**

Andrews includes four counts in his complaint.[1] In the first count, Andrews alleges that

---

[1] Andrews alleges that when officers responded to separate him from inmate Rivera, they used

all defendants have been deliberately indifferent to his safety and serious mental health needs. In the second count, Andrews alleges that he has a protected liberty interest in avoiding SRG protective custody and that defendants Semple, Aldy, Black, and Papoosha violated his right to due process by failing to remove him from SRG status, transfer him after the fight with inmate Rivera, or transfer him to Garner Correctional Institution. In the third count, Andrews alleges that defendants Semple, Aldy, Black, Walker, and Papoosha violated his Eighth Amendment rights by creating a policy, or permitting an existing policy to continue, under which he was deprived of adequate safety, by failing to properly supervise their subordinates to ensure his safety. In the fourth count, Andrews alleges that the defendants have violated his rights under the Americans with Disabilities Act.

    A. Deliberate Indifference

        *1. Deliberate Indifference to Safety*

Prison officials have a duty to make reasonable efforts to ensure inmate safety. To establish a constitutional violation, an inmate must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists where prison officials know of and disregard an excessive risk to inmate safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw

---

excessive amounts of chemical agent on him. However, he does not allege that any of the defendants in this case were involved in the incident. Thus, Andrew fails to state an excessive force claim against any defendant.

4

that inference). For example, correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated.

Andrews alleges that the defendants were aware of the prior altercation that he had with inmate Rivera, but failed to ensure that the inmates were kept apart. That allegation is sufficient to support a plausible failure to protect claim.

*2. Deliberate Indifference to Mental Health Needs*

Andrews contends that his confinement under the restrictive conditions in SRG protective custody exacerbates his mental illness. To state a claim for deliberate indifference to a serious mental health need, Andrews must show both that his mental health need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious". *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration, or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Andrews's mental disorders, as alleged, satisfy the "sufficiently serious" requirement.

The subjective component requires that the defendants be actually aware of a substantial risk that the inmate would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006). Andrews alleges that the defendants were aware of the conditions in the SRG protective custody unit and the effect of those conditions on his mental disorders, but continued to confine him there rather than transferring

5

him to a housing unit constituting the most integrated setting possible to accommodate his mental health needs. Those allegations are sufficient, at this stage of litigation, to state a plausible claim for deliberate indifference to mental health needs.

  B. <u>Due Process Violations</u>

Andrews alleges that he has a protected liberty interest in avoiding SRG protective custody and that defendants Semple, Aldy, Black, and Papoosha violated his right to due process by failing to remove him from the SRG unit generally, or after the fight with inmate Rivera, and by failing to transfer him to Garner Correctional Institution, which he characterizes as the only mental health facility in the State.

In order to state a due process claim relating to his conditions of confinement, Andrews must establish that he possessed a liberty interest and that he was deprived of this liberty interest as a result of insufficient process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). Andrews must plead that the conditions at issue imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life". *Id.* (internal quotation marks omitted) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). In his complaint, Andrews describes the conditions in the unit and argues that he should not be classified as SRG or confined in SRG protective custody because he is not a gang member. At this stage of litigation, the allegations are sufficient to state a plausible claim regarding his SRG classification and failures to transfer him from the SRG unit.

To the extent the claim in this second count is based on a failure to transfer Andrews to Garner Correctional Institution, his claim must fail. Although Andrews has a constitutional right to adequate mental health treatment, he has no constitutional right to be housed in any particular

correctional facility. *See Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or prison has "more severe rules."). Thus, to the extent Andrews is asserting a due process claim based on the fact that he is not confined at Garner Correctional Institution, his claim fails because he has no constitutionally protected right to be housed there.

   C. Supervisory Liability

Andrews also includes a claim for supervisory liability against defendants Semple, Aldy, Black, Walker, and Papoosha for creating or continuing the policy under which his safety was not adequately protected and for failing to train and supervise subordinates to prevent harm.

To state a claim for supervisory liability, Andrews must demonstrate one or more of the following criteria: (1) the defendants actually and directly participated in the alleged action, (2) the defendants failed to remedy a wrong after being informed of the wrong through a report or appeal, (3) the defendants created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or permitted such a policy or custom to continue, (4) the defendants were grossly negligent in their supervision of the officers who committed the constitutional violation, or (5) the defendants were deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Andrews must also demonstrate a causal link between the actions of the supervisory official and his injuries. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

7

Andrews alleges that the defendants were responsible for creating or continuing the SRG protective custody unit and that the defendants continued to house both Andrews and inmate Rivera in the unit, despite knowing that there was a separation profile between Andrews and inmate Rivera. He also alleges that they failed to properly train and supervise staff to ensure that inmate Rivera was secured in his cell before Andrews was released for recreation. Those allegations are sufficient, at this stage of litigation, to state a plausible claim for supervisory liability.

D. Americans with Disabilities Act

Andrews alleges that all defendants violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities". 42 U.S.C. § 12101(b)(1). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Accordingly, to state a claim under the ADA, Andrews must plead that he was (1) a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from the defendants' services, programs, or activities, or was otherwise discriminated against by the defendants, by reason of his disability. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities". 42 U.S.C. § 12102(2)(A). When analyzing claims,

"courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities." *Troeger v. Ellenville Cent. Sch. Dist.*, 523 F. App'x 848, 852 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998)). Andrews has described himself as having been classified as "seriously mentally ill", and as having been "diagnosed with several mental health disorders such as bipolar disorder, depression, post-traumatic stress disorder, and paranoia". At this stage, I assume that Andrews's mental disorders constitute a disability under the ADA. I also note that the defendants are subject to the ADA. *See Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 210 (1998) (holding that "[s]tate prisons fall squarely within the statutory definition of 'public entity'").

The more difficult question is whether Andrews has been denied the opportunity to participate in or benefit from the defendants' services, programs, or activities, or was otherwise discriminated against by the defendants, by reason of his mental disorders. "[T]he relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled." *Henrietta D.*, 331 F.3d at 273. However, to state a claim under the ADA, Andrews must have been denied benefits *by reason of* a disability, rather than for some other legitimate (*e.g.*, security) purpose. *See Beckford v. Portuondo*, 151 F. Supp. 2d 204, 220 (N.D.N.Y. 2001) ("To conclude that Defendants placed [the plaintiff] in a cell that was not wheelchair equipped because of an overt intent to deprive him of a service, program, or activity by reason of his disability stretches all bounds of credibility. Plaintiff was placed in a cell not containing wheelchair accommodations because he was a danger to other inmates and

9

officers."); *Kiman v. N.H. Dep't of Corr.,* 451 F.3d 274, 285-86 (1st Cir. 2006) (holding that ADA was not violated when inmate was denied use of a cane for security reasons).

Andrews makes two types of assertions of deprivation in relation to his ADA claim: First, he states that he has been denied visitation, use of certain prison facilities, participation in certain prison programs, and possession of certain property "that general population inmates are allowed", and that these denials are "due to his status". Second, Andrews claims that he has not been afforded "reasonable accommodations" by virtue of his confinement "in restrictive conditions and not in the most integrated setting appropriate for his needs".[2]

With respect to Andrews's complaint of deprivations due to his "status", Andrews appears to be referring to his SRG classification. Andrews does not suggest that his SRG classification was due to his mental disorders, and he also indicates that those restrictions are due to "non-medical and mental health reasons". The complaint can therefore not be read as alleging that Andrews was deprived of certain benefits "by reason of [his] disability", 42 U.S.C. § 12132, and thus fails to state a claim under the ADA.

With respect to Andrews's allegation that the ADA has been violated by his confinement in conditions that are not "the most integrated setting appropriate for his needs", Andrews again fails to state a claim under the ADA. Andrews's allegation is that the conditions of his

---

[2] In setting out his ADA claim, Andrews also claims that, by restricting his visitation privileges and telephone use "for non-medical and mental health reasons", the defendants are "in violation of the Connecticut Patients' Rights". Andrews is presumably referring to the provisions of Conn. Gen. Stat. §17a-540 *et seq.*, known as the Connecticut Patients' Bill of Rights. Because the Connecticut Supreme Court has held that the provisions of this law do not apply to state correctional institutions, I do not address the allegation further. *See Riddick v. Chevalier*, 2013 WL 4823153, at *2 (D. Conn. Sept. 9, 2013) (citing *Wiseman v. Armstrong,* 850 A.2d 114, 115 (Conn. 2004)).

10

confinement are not sufficiently accommodative of his disability. While, as discussed previously, Andrews may be able to state a claim of deliberate indifference to his medical needs, the ADA does not provide a separate remedy for insufficient treatment of his disability. *See, e.g.*, *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996) ("[The plaintiff] is not complaining of being excluded from some prison . . . program . . . that his paraplegia would prevent him from taking part in without some modification of the program. He is complaining about incompetent treatment of his paraplegia. The ADA does not create a remedy for medical malpractice."); *Thomas v. Pennsylvania Dep't of Corr.*, 615 F. Supp. 2d 411, 427 (W.D. Pa. 2009) ("While denying plaintiff a handicap cell so that he has access to handrails and push-on sink levers may constitute denial of medical treatment, . . . it does not constitute a violation of Title II of the ADA.").

## CONCLUSION

The ADA claim is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the Eighth Amendment claims for deliberate indifference to serious mental health needs and deliberate indifference to safety as well as the supervisory liability claim. The case also will proceed on the due process claims but only as pertains to Andrews's classification as SRG and resulting confinement in SRG protective custody.

In accordance with the foregoing analysis, it is hereby ordered that:

(1) **The Clerk shall** verify the current work address for each defendant with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the complaint to the defendants within **twenty-one (21) days** of this order, and report to the court on the status of the waiver requests on the thirty-fifth (35) day after

11

mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) **The Clerk shall** send plaintiff a copy of this order.

(4) **The Clerk shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests should not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

(11) The Court cannot effect service on defendant Correctional Officer Doe without his full name and current work address. Andrews shall obtain this information during discovery and file a notice containing the required service information. Once defendant Doe has been identified, the Court will order that he be served.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of November 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge